IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MOUNTAIN MARKETING )
PROFESSIONALS, INC., )
                  Plaintiff )
      v. )    No. 3:04-cv-231
)
FAIRFIELD RESORTS, INC. and
KIRK JOHNSON, )
               Defendants )

## MEMORANDUM OPINION

This is a diversity action removed to this court from the Circuit Court of Sevier County. Plaintiff Mountain Marketing Professionals, Inc. (Mountain Marketing) alleges that defendant Fairfield Resorts, Inc. (Fairfield) and Kirk Johnson (Johnson) destroyed its business by breaching and interfering with a number of its contracts and business relationships. Plaintiff seeks to recover under theories of breach of contract, intentional interference with business relationships, common law and statutory inducement of breach of contract (T.C.A. § 47-50-109), civil conspiracy, and the Tennessee Consumer Protection Act (T.C.A. § 47-18-101, *et seq.*). Currently pending is the defendants' motion for summary judgment [Court File

#23]. For the reasons that follow, the motion will be granted in part and denied in part.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

Prior to the filing of a bankruptcy petition, Mountain Marketing was primarily in the business of marketing to and attracting customers to take tours of timeshare resorts in Sevier County, Tennessee. Tait Carson is Mountain Marketing's sole shareholder. The marketing was conducted through a number of marketing strategies including the use of numerous billboards throughout East Tennessee and in surrounding states, the use of advertising in local tourist publications, and by direct contacts with customers at tourist information booths located in Sevier County. In January 2002, Mountain Marketing was operating tourist information booths at 13 locations in Sevier County. At each location, Mountain Marketing had one or more independent contractors who were responsible for meeting with individuals who would potentially take a tour of a timeshare resort.

2

The independent contractors were referred to as "off-site premises contacts" or more commonly "OPC's."

Mountain Marketing began its business operations in Sevier County in 1999. From the beginning of its operations until December 8, 2002, Mountain Marketing was providing its services to Fairfield timeshare resort located in Sevier County, as well as to two other resort companies. On December 8, 2000, Mountain Marketing entered into a written marketing contract with Bluegreen Vacations Unlimited, Inc. (Bluegreen). From that point, the vast majority of the tours initiated from the tourist information locations of Mountain Marketing were sent to two Bluegreen timeshare resorts in Sevier County.

Beginning in April 2001, Tait Carson began hearing rumors that Kirk Johnson of Fairfield and Alex Hodges of Bluegreen were attempting to destroy Mountain Marketing's business. On April 16, 2001, Tait Carson had a conversation with Alex Hodges of Bluegreen regarding these rumors. At that time, Hodges told Carson that Kirk Johnson had been taking a number of specified actions to attempt to harm Mountain Marketing. These specific actions included attempting to persuade Bluegreen to terminate its marketing agreement with Mountain Marketing, to shut tours off, to negotiate agreements with landlords of Mountain Marketing, and

to get Bluegreen to participate in the destruction of the business of Mountain Marketing.

In addition, Bluegreen, influenced in part by Kirk Johnson of Fairfield, failed to make proper contractual payments to Mountain Marketing by failing to pay for qualified prospects under its contract with Mountain Marketing. Not qualified prospects are referred to in the industry as "NQ's," and the verb tense the parties would refer to a prospect as being "NQ'd." Plaintiff contends that Bluegreen and Fairfield improperly designated NQ's in order to put Mountain Marketing out of business.

In January 2002, Bluegreen began entering into lease contracts with the landlords of Mountain Marketing. Since January 2002 and during the contractual period of prohibition, Bluegreen solicited or operated out of 11 locations that were previously operated by Mountain Marketing. Fairfield operated out of two locations previously operated by Mountain Marketing.

In addition, since January 2002, and during the contractual period of prohibition, Bluegreen hired 42 OPC's who were previously independent contractors or employees of Mountain Marketing. Fairfield also hired a number of OPC's. Bluegreen ended up with 31 of the 50 billboards previously used by Mountain

4

Marketing, and Fairfield ended up with 10 to 15 billboards. In summary, virtually the entirety of the prior business operation of Mountain Marketing is now being operated by either Bluegreen or Fairfield.

## II.
### *Statute of Limitations Issues*

As indicated above, on April 16, 2001, Tait Carson of Mountain Marketing had a meeting with Alex Hodges of Bluegreen, at which time he reportedly confirmed a number of actions allegedly taken by the defendants to harm plaintiff's business. Defendants contend that it was at that time that the statute of limitations on plaintiff's various claims began to run. The lawsuit in this case was filed on April 16, 2004.

Initially, defendants contend that plaintiff's claim under the Tennessee Consumer Protection Act is barred by the applicable one-year statute of limitations. T.C.A. § 47-18-110 provides for a one-year statute of limitations with respect to such claims, and plaintiff concedes that this is the applicable statute of limitations to that claim. Accordingly, defendants are entitled to summary judgment on the claim under the Tennessee Consumer Protection Act.

5

Plaintiff also asserts claims for both common law and statutory inducement to breach of contract, which is actionable under T.C.A. § 47-50-109. Defendants contend that the applicable statute of limitations to plaintiff's claim for statutory procurement for breach of contract is T.C.A. § 28-3-104, which provides in pertinent part:

> The following actions shall be commenced within one (1) year after the cause of action accrued:
>
> . . .
>
> (4) Actions for statutory penalties.

Plaintiff claims that the applicable statute of limitations, not only to its statutory inducement to breach, but only to its common law inducement to breach, interference with business relations, and conspiracy claims is set out in T.C.A. § 28-3-105. That section provides in pertinent part:

> The following actions shall be commenced within three (3) years from the accruing of the cause of action:
>
> (1) Actions for injuries to personal or real property;
>
> . . .

In Tennessee, the appropriate statute of limitations is determined by the gravamen of the complaint. I am opinion that the applicable statute of limitations for the above four causes of action is the three-year one. *See Smith v. Rosenthal*

6

*Collins Group, LLC*, 340 F. Supp. 860 (W.D. Tenn. 2004), citing *Carruthers Ready-Mix, Inc. v. Cement Mason Local Union No. 520*, 779 F.2d 320, 324 (6th Cir. 1985) (applying § 28-3-105 to actions for inducement of breach of contract and unlawful interference with a business because "a right to be free from interference with one's business arises under Tennessee law from every person's 'right of property in his own labor'"). All contrary authority pre-dates *Carruthers*. *See Carlson v. Hightower*, 612 F. Supp. 603, 605 (E.D. Tenn. 1985).

In addition, defendants contend that even if the three-year statute of limitations is applicable, plaintiff's three-year claims would nevertheless be barred because the meeting between Mr. Carson and Mr. Hodges occurred on April 16, 2001, and the complaint was not filed until April 16, 2004. However, I am of the opinion that questions of material fact remain with respect to whether plaintiff's claims actually accrued on April 16, 2001, and whether later actions by the defendants suggesting that the dispute might be resolved might have estopped defendants from raising the statute of limitations. Mr. Carson's testimony in his deposition regarding what he knew about his possible causes of actions and when he knew it was as follows:

> Q. So by the time you sat down with Mr. Hodges on April 16, 2001, and he initialed that document, you had heard from a number of sources and had a pretty good

7

idea that Mr. Hodges and Mr. Johnson were conspiring to destroy your business?

A. You know, I really had a hard time making it out to be true, to be honest with you, why would they spend so much time and effort to put me out of business instead of running their own company. And is this [sic] just a rumor, you know. Every industry has their rumors or, their plaques or cancers, you know, and I just thought that it was just, you know, people, you know, wanting to talk about me or them. And I didn't really - it was pretty much a hearsay thing at that point other than when I heard, when Alex - I knew how close they were. And being the best man in his wedding, giving him his first job in the timeshare industry, being friends for years, and, you know, and Alex admitted this on his best friend that, you know, Kirk, yeah, he asked me to cut your price, shut you off so your locations would come available. And I even questioned Alex. You know, this is your friend, this is who you want to be friends with? People that do this to people. You know, I just couldn't believe that -

. . .

Carson deposition at p.102.

Under the circumstances, it is unclear exactly when in the exercise of reasonable care and diligence plaintiff's injury should have been discovered. *See Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981). In addition, apparently another conversation took place in late April between Kirk Johnson and Tait Carson in which Johnson allegedly told Carson that he would stop soliciting landlords, would quit attempting to hire Mountain Marketing's employees, and would

8

quit saying that he was going to try to put Mountain Marketing out of business. Arguably, such statements could have been made to induce the plaintiff to refrain from filing a lawsuit and could lead to an estoppel from asserting a statute of limitations defense. *See Ingram v. Earthman*, 993 S.W.2d 611, 633 (Tenn. Ct. App. 1999). Accordingly, defendants are entitled to summary judgment on the grounds of statute of limitations only with respect to the claim under the TCPA.

### III.

**Plaintiff's Breach of Contract Claim With Regard to Big Daddy's Fireworks**

Pursuant to a February 2002 written agreement with plaintiff, Fairfield began to operate an OPC location at Big Daddy's Fireworks. However, the owner and lessor of the property subsequently sold that property to a third party who then cancelled its lease with Fairfield. Since February 28, 2003, Fairfield has no longer operated an OPC facility at Big Daddy's and no longer solicits qualified prospects from that location. Plaintiff contends that under the terms of its written contract, it is entitled to recover $14 for any tours that may have been generated by parties other than Fairfield at that location through the expiration of the written agreement in February 2005. It appears that there is nothing in the contract which would require Fairfield to continue to pay the $14 fee after its lease had been cancelled.

9

Accordingly, defendants are entitled to summary judgment on the breach of contract claim concerning the contract regarding Big Daddy's Fireworks.

IV.

***Whether Plaintiff Can Demonstrate the Elements of
It's Inducement of Breach of Contract Claims***

In order to recover for inducement to breach of contract, whether under common law or statute, the following elements must be established: (1) That there was a legal contract; (2) of which the wrongdoer was aware; (3) that the wrongdoer maliciously intended to induce a breach; (4) as a proximate result of the wrongdoer's action, a breach occurred; (5) that resulted in damages to plaintiff. *Quality Auto Parts Company v. Bluff City Buick Company*, 876 S.W.2d 818 (Tenn. 1994). Defendants contend that it is undisputed that the 13 leases which plaintiff had with its landlords were in place at the time that plaintiff ceased doing business and therefore that defendants could not have induced the breach of any contracts. However, based on the record before the court, it is simply unclear which, if any, of the leases which plaintiff had with its landlords were breached by the landlords. Moreover, plaintiff refers to contracts other than the leases, the breaches of which defendants may have induced. For example, plaintiff suggests that upon defendants' inducement, Bluegreen stopped making payments which it owed to the plaintiff, thereby causing plaintiff's business demise. I conclude that questions of

10

material fact remain to be determined with respect to whether plaintiff might establish the elements of an inducement to breach claim.

V.

*Conclusion*

In light of the foregoing, defendants' motion for summary judgment [Court File #23] will be granted in part and denied in part. With respect to plaintiff's claims under the Tennessee Consumer Protection Act and plaintiff's breach of contract claim with respect to Big Daddy's Fireworks, defendants' motion will be granted. In all other respects, the motion will be denied.

Order accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE

11